# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CINTHIA JESSICA C.Q.,[1]<br><br>Petitioner,<br>v.<br><br>CORECIVIC, INC., et al.,<br><br>Respondents. | Case No. 1:25-cv-01900-EGC (HC)<br><br>**ORDER GRANTING PETITIONER'S MOTION FOR ATTORNEY'S FEES PURSUANT TO EAJA**<br><br>(Doc. 19) |

Petitioner Cinthia Jessica C.Q. ("Petitioner"), formerly a federal detainee proceeding by counsel, initiated this action with the filing of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1).

Pending before the Court is the motion of Petitioner's counsel for the award of attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (Doc. 19). Respondents filed an opposition. (Doc. 20). Petitioner filed a reply. (Doc. 21).

## I. BACKGROUND

Following the parties' briefing on Petitioner's application for temporary restraining order and the merits of the petition, on January 27, 2026, the Court granted the petition and ordered that Respondents release Petitioner immediately, finding that Petitioner had a protected liberty interest

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only their first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

and that due process requires a pre-deprivation hearing. (Doc. 17). Judgment for Petitioner was entered thereafter. (Doc. 18).

## II. LEGAL STANDARD

The EAJA provides for an award of attorney's fees and costs to private litigants who prevail "in any civil action (other than cases sounding in tort)" against the United States and timely file a petition for fees. 28 U.S.C. § 2412(d)(1)(A). Under the EAJA, a court shall award attorney's fees to the prevailing party unless it finds the government's position was "substantially justified or that special circumstances make such an award unjust." 28 U.S.C. § 2412(d)(1)(A).

## III. ANALYSIS

### A. Merits

Respondents oppose Petitioner's motion for award of attorney's fees and costs the ground that the EAJA does not permit the award of attorneys' fees here because Respondents' position was "substantially justified." (*See* Doc. 20).

To defeat a prevailing party's claim to attorney's fees under the EAJA, the government bears the burden of showing that its position was substantially justified. *Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005) (citing *Gonzales v. Free Speech Coal*., 408 F.3d 613, 618 (9th Cir. 2005)). To be substantially justified, the government's position must have a "reasonable basis" in law and fact. *Id*. (citations omitted). "When evaluating the government's 'position' under the EAJA, [courts] consider both the government's litigation position and the 'action or failure to act by the agency upon which the civil action is based.'" *Ibrahim v. U.S. Dep't of Homeland Security*, 912 F.3d 1147, 1168 (9th Cir. 2019) (*quoting* 28 U.S.C. § 2412(d)(1)(B)).

Respondents maintain in opposition to Petitioner's fee motion that their prelitigation and litigation positions were substantially justified given that Petitioner's detention was pursuant to a statute they assert mandates detention, (*see* Doc. 20 at 2–3 (citing 8 U.S.C. § 1225)). Even if that premise is true, Respondents continue to unreasonably discount the applicability of the Due Process Clause under the Fifth Amendment to the U.S. Constitution when, as here, immigration authorities seek to maintain custody of a noncitizen who had been released on her own recognizance, without any determinate endpoint or assertions of violations of conditions of release. In Respondents'

characterization of governing precedent, section 1225(b)'s provision for mandatory detention pending completion of removal proceedings entirely displaces applicability of the Due Process Clause such that indeterminate detention is not only warranted, but required. Thus, Respondents argued here that Petitioner has no liberty interest that could implicate a due process right to release because they were never lawfully admitted to the United States. (*See* Doc. 8 at 1–2) (arguing Plaintiff is an applicant for admission subject to mandatory detention).

But in making this argument, Respondents have *never* attempted to reconcile that after immigration authorities detained Petitioner, Respondents then released Petitioner into the country, implicitly finding that her release presented neither flight nor danger risks. *See* 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."). Nor do Respondents refute or grapple with the fact that, for the almost two-year period following her release, Petitioner successfully complied with the conditions of her release. (*See* Doc. 10 at 2); *see also*, *e.g.*, *Tzafir v. Blanche*, No. 25-cv-02126-JHC, 2026 WL 1413606, at *2 (W.D. Wash. May 20, 2026) (finding government's position not substantially justified where petitioner was ordered removed but then released on an order of supervision, complied with all conditions of release for years, and eventually was rearrested; reasoning, "when revoking a noncitizen's OSUP, the government must articulate changed circumstances in the noncitizen's case").

In addressing a related provision of the INA governing mandatory detention of certain noncitizens, the Supreme Court has recognized that such mandatory detention "does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it." *Nielsen v. Preap*, 586 U.S. 392, 420 (2019) (interpreting section 1226(c)). The most reasonable interpretation of *Preap* is that immigration detainees retain procedural due process rights notwithstanding the operation of a statute providing for a detainee's mandatory detention. Indeed, this interpretation—that statutory detention regimes are not to the exclusion of and do not displace

a detainee's rights under the U.S. Constitution—is consistent with the Supreme Court's earlier holdings acknowledging this principle. *See Zadvydas v. Davis*, 533 U.S. 678, 693, 695 (2001) (holding that the government's statutory authority to detain noncitizens pending removal "is subject to important constitutional limitations" because due process applies to anyone in the United States, "whether their presence here is lawful, unlawful, temporary, or permanent"); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (reiterating that a noncitizen who successfully enters the United States and afterwards is subject to removal proceedings retains due process rights) (citing cases), *superseded by statute on other grounds as stated in Dep't of Homeland Security v. Thuaissigiam*, 591 U.S. 103, 135 (2020).

Moreover, Petitioner was re-detained by the government without prior notice or explanation on October 15, 2025, (*see* Doc. 1 ¶ 20), after many courts had already decided that such re-detention without a pre-deprivation hearing violated due process. *See*, *e.g.*, *Pinchi v. Noem*, 792 F.Supp.3d 1025 (N.D. Cal. July 24, 2025). Additionally, the Court of Appeals had long made it clear that civil immigration detention must be accompanied by adequate procedural safeguards. *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). Indeed, the Ninth Circuit has now joined numerous other Circuit Courts of Appeals in holding that the proper detention authority for noncitizens, like Petitioner, who have been released into the United States is the discretionary authority in 8 U.S.C. § 1226, not the mandatory detention authority exercised by respondents under 8 U.S.C. § 1225(b). *See Rodriguez Vazquez v. Bostock*, No. 25-6842, __ F.4th __, 2026 WL 2196424, at *31; *accord Barbosa da Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Mia.*, 175 F.4th 1258, 1262 (11th Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1246 (10th Cir. 2026); *Cirrus Rojas v. Olson*, No. 25-3127, __ F.4th __, 2026 WL 2198315, at *2 (7th Cir. July 30, 2026); *Guerrero Orellana v. Moniz*, No. 25-2152, 2026 WL 2352042, at *17 (1st Cir. Aug. 13, 2026).

In light of the authority and the circumstances set forth above, the Court finds that Respondents' positions were not substantially justified because such positions do not have a "reasonable basis" in law and fact. *Thangaraja*, 428 F.3d at 874.

**B. Fees**

In determining what constitutes "reasonable" attorney's fees under the EAJA, "the district court must apply the hybrid approach adopted in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)." *United States v. $12,248 U.S. Currency*, 957 F.2d 1513, 1520 (9th Cir. 1991). "First, the district court must calculate the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. . . Next, in rare instances, the court may increase or reduce the presumptively reasonable lodestar fee on the basis of factors" that are not captured by the lodestar calculation. *Id*.

The Ninth Circuit maintains a list of the statutory maximum hourly rates authorized by the EAJA, adjusted for increases in the cost of living, on its website. *See Thangaraja*, 428 F.3d at 876–77; "Statutory Maximum Rates," *available at* https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/. This maximum rate—presently $258.46—controls unless the district court finds that a "special factor" warrants a higher rate, *see Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001), such as "where the quality of representation resulted in a degree of success beyond what would be reasonably expected at that rate." *Int'l Woodworkers of Am., AFL-CIO, Local 3-98 v. Donovan*, 792 F.2d 762, 766 (9th Cir. 1985).

Here, Respondents do not challenge the reasonableness of the amount of fees requested by counsel for Petitioner. (*See* Doc. 20). According to their declaration, counsel for Petitioner, Attorney Salgado, spent approximately 15.5 hours on tasks associated with litigating the merits of the case. Additionally, counsel for Petitioner seeks to recover for approximately 5.0 hours of time spent by paralegals and staff on the litigation, as well as the $5.00 filing fee. (Doc. 19-1). Counsel attaches the signed declaration of Petitioner in support of the motion. (Doc. 19-2).

Counsel also attaches a billing ledger. (Doc. 19-4). Attorney Salgado billed approximately 15.5 hours on all tasks associated with the petition, including preparing the petition, communicating with Petitioner, drafting the motion for temporary restraining order, drafting a notice of noncompliance and motion to enforce judgment. (*Id.*).

For the sake of comparison, in an out-of-district immigration habeas case involving a similar amount of litigation as this action—the preparation and filing of a petition and motion by the petitioner to proceed by pseudonym, the litigation and hearing on the petitioner's application for temporary restraining order, and the petitioner's EAJA fee motion—the petitioner's three attorneys billed 50.55 hours. *See S.F. v. Bostock*, No. 3:25-cv-01084-MTK2026 WL 1230044, at *4-6 (D. Or. May 5, 2026). The undersigned's experience presiding over a significant number of immigration related habeas corpus cases, coupled with the hours found reasonable by the *S.F.* court in a similarly postured action, suggest that counsel's expenditure in this action of 15.5 hours is reasonable. As to the billing entries for work conducted by paralegals and staff, the tasks as recorded on the billing entries do not appear to be duplicative, consisting primarily of tasks related to filing, service of documents, compiling of exhibits, and client communication. (Doc. 19-4). The Court finds the total expenditure of time by Attorney Salgado and staff, approximately 20.5 hours, to be reasonable.

Counsel for Petitioner requests paralegal fees at the rate of $125 per hour. (Doc. 19-4). Another judge of this District recently found this to be within the prevailing paralegal rate, and the Court finds this rate to be appropriate. *See Saesee v. Bisignano*, No. 1:21-cv-01562-SKO, 2026 WL 1398969, at *3 (E.D. Cal. May 19, 2026).

The Court further finds that the award of $5.00 in costs associated with the filing fee is appropriate and permissible under the EAJA. *See* 28 U.S.C. § 2412(a)(1); 28 U.S.C. § 1920.

In sum, the Court finds as follows:

(1) Total attorney hours deemed reasonable: 15.5 * $258.46/hr. = $4,006.13;

(2) Total paralegal hours deemed reasonable: 5 * $125 /hr. = $625.00;

(3) Filing fee = $5.00

(4) Total fees and costs deemed reasonable: $4,636.13.

In light of the above, and having found the requested amount reasonable, the undersigned will recommend that the motion be granted.

## IV. CONCLUSION & RECOMMENDATION

For the foregoing reasons, it is HEREBY ORDERED:

1. Petitioner's motion for the award of attorney's fees, (Doc. 19), is GRANTED;
2. Respondents is ordered to remit to counsel for Petitioner attorneys' fees and expenses in the amount of $4,636.13; and
3. This award be made payable to Petitioner, but if the Department of the Treasury determines that Petitioner does not owe a federal debt, then Respondents SHALL cause the payment of attorney's fees and expenses to be made directly to Petitioner's counsel.

IT IS SO ORDERED.

Dated: **August 31, 2026**

Erin Sanz Castillo

UNITED STATES MAGISTRATE JUDGE